UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DENISE M FUEHRING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:11-CV-194 CAN |
| | ) |
| MICHAEL J. ASTRUE | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On October 11, 2011, Plaintiff, Denise M. Fuehring ("Fuehring"), filed her complaint seeking review of the final decision of Defendant, Commissioner of Social Security ("Commissioner"). Fuehring filed her opening brief on October 11, 2011, and the Commissioner filed his response on December 15, 2011. This Court now enters its ruling based on the consent of the parties and 28 U.S.C. § 636(c).

**I.    PROCEDURE**

On January 12, 2009, Fuehring filed her application for disability insurance benefits alleging a disability beginning January 7, 2007. Her application was denied on March 17, 2009, and again after reconsideration on May 5, 2009. Fuehring testified before an Administrative Law Judge ("ALJ") on November 13, 2009. On January 22, 2010, the ALJ issued her opinion denying Fuehring's application for disability benefits. Fuehring filed her complaint in this Court pursuant to 42 U.S.C. § 405(g).

**II.    RELEVANT BACKGROUND**

Fuehring was born on May 22, 1954 and was 52 years old at the alleged onset of her disability (Tr. 38). She is a high school graduate and has past relevant work experience as a

receptionist, medical secretary, customer service representative, order editor, and pet-sitter (Tr. 40, 66-67). She last met the insured status requirements of the Social Security Act on December 31, 2008 (Tr. 20).

### A. Medical Evidence

In June 2008, Fuehring sought treatment from Dr. Nenadovich for lower back pain (Tr. 283). X-rays showed some enlargement of the L4-5 and L5-S1, as well as a vertebra that had slipped out of place. *Id.* Dr. Nenadovich's examination of Fuehring showed no significant tenderness, Fuehring sat comfortably, and had a normal gait and well-maintained range of motion. *Id.* An MRI performed a few days later showed minimum to mild disc bulges and mild narrowing of the spinal canal and nerve passages (Tr. 283).

In July 2008, Fuehring returned to Dr. Nenadovich with similar complaints of lower back pain (Tr. 281). Dr. Nenadovich reviewed the June MRI and recommended an epidural injection. *Id.* Fuehring was given two prescription pain relievers and was referred to a pain specialist for the epidural injection. *Id.* By the end of the month, Fuehring reported a 30% improvement in her pain (Tr. 278). Dr. Nenadovich prescribed physical therapy and concluded that she was doing well. *Id.*

In September 2008, Fuehring went to another doctor with complaints of pain in her left knee (Tr. 276). She was diagnosed with a cyst caused by a buildup of fluid and a cartilage tear. *Id.* On October 17, 2008, Fuehring underwent knee surgery (Tr. 272). By the end of October, she reported that she felt no pain. (Tr. 269-270).

On December 9, 2008, Fuehring returned to Dr. Nenadovich complaining of pain in her left buttocks and thigh (Tr. 268). The examination showed increased pain when the leg was

extended. *Id.* She was prescribed a pain reliever and was advised to have another epidural injection. *Id.* On December 18, Fuehring returned to the pain specialist for the injection (Tr. 221). After this injection, she reported a 95% improvement in her pain (Tr. 266).

Fuehring returned to the pain specialist on January 22, 2009 with complaints of right knee pain and fullness of the left knee (Tr. 304). The examination showed increased warmth of the right knee, tenderness, and pain. *Id.* The physician recommended an MRI, which revealed a horizontal tear of cartilage in the right knee (Tr. 305). On March 13, 2009, Fuehring underwent surgery on her right knee (Tr. 369-370).

On February 12, 2009, Fuehring's family physician, Dr. Jacobus, completed a questionnaire about her impairments (Tr. 310). Dr. Jacobus stated that Fuehring's symptoms include chronic back pain. *Id*. He stated that her pain and other symptoms would interfere with her attention and concentration (Tr. 312-313). Further, he opined that Fuehring would require hourly unscheduled breaks for twenty minutes, and that Fuehring would be absent from work more than three times per month (Tr. 313-314).

In March 2009, state reviewing physicians assessed Fuehring to be at a light exertion level as of her date last insured (Tr. 341-348). The physicians found that Fuehring could occasionally perform all postural activities (Tr. 343). On May 12, 2009, Dr. Nenadovich filled out a Lumbar Spine Impairment Questionnaire in which he diagnosed Fuehring with a degenerative arthritis of the spinal joints and a narrowing of the spinal canal (Tr. 352-358). Fuehring's primary symptoms were lower back pain, right lower extremity pain, and thigh pain. *Id.* In his opinion, Fuehring could sit two hours total and stand or walk for three hours in an eight hour workday (Tr. 354). She could lift five to ten pounds occasionally, but never more

3

than that (Tr. 355).  He believed that Fuehring's pain and other symptoms were frequently severe enough to interfere with her attention and concentration (Tr. 356).  He noted that she required unscheduled thirty to sixty minute breaks every one to two hours (Tr. 357).  He estimated that Fuehring would miss work more than three times per month.  *Id.*

On July 2, 2009, Fuehring received another epidural injection from her pain specialist (Tr. 360).  In September 2009, she told Dr. Nenadovich that she had increased pain and some weakness and numbness of the legs (Tr. 484).  An MRI taken a day later revealed degenerative arthritis of the spinal joints, narrowing of the spinal canal, and a tissue mass (Tr. 459-460).  Dr. Nenadovich recommended spinal surgery (Tr. 559).  On October 5, 2009, Fuehring underwent spinal surgery, performed by Dr. Nenadovich, in which one of her discs was removed (Tr. 525).  On October 15, she stated that the surgery had relieved 50% of her pain (Tr. 528).  She was referred to physical therapy on November 10, 2009 (Tr. 529).  On March 1, 2010, Fuehring complained of worsening back pain (Tr. 596).  Dr. Nenaodovich reported that there was soreness present in the muscles and pain when she flexed or extended.  *Id.*  He recommended that she stop physical therapy and start home exercises.  *Id.*

**B.     ALJ Hearing on November 13, 2009**

**1.     Fuehring's Testimony**

At the hearing, Fuehring testified about her back pain and epidural injection treatments (Tr. 50-51, 60-61).  She stated that the improvement after her second injection was "huge" (Tr. 61).  She also discussed her spinal and knee surgeries (Tr. 46).  Finally, she testified that between July 2008 and December 2008 she could not sit or stand for more than twenty to thirty minutes and could not lift more than five to ten pounds (Tr. 53).  She could not bend easily

because of her knees, and she laid down about three to four times a day for thirty minutes at a time (Tr. 55). Her household chores were done by her husband and a person that came once a month to clean (Tr. 58).

### 2. Vocational Expert Testimony

The ALJ asked the vocational expert if an individual with Fuehring's age, education, and work experience could perform any of Fuehring's past work (Tr. 67). The vocational expert responded that this individual could perform Fuehring's past work as a pet sitter (Tr. 68). If the individual was restricted to sedentary work, she could perform Fuehring's past work as a medical secretary (Tr. 68). The vocational expert stated that an individual needs to be focused on the job 35% to 90% of the time, and if the individual was unable to perform detailed or complex tasks due to her pain and medication side-effects, she could not maintain this type of work (Tr. 70-71).

Finally, the vocational expert testified that an individual that is limited to sedentary work but can sit no more than twenty minutes at one time before needing to change positions would be able to maintain work only if she could sit for a total of six hours during the day (Tr. 70). The vocational expert said that an individual that needs to lie down during the day would be unable to perform any work (Tr. 71).

### 3. ALJ Determination

On January 22, 2010, the ALJ found that Fuehring was not disabled (Tr. 29). The ALJ found that Fuehring had the residual functional capacity ("RFC") to perform light work, and was capable of performing past relevant work as a medical secretary or order editor (Tr. 21, 28).

**III.     Analysis**

### A. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. *See* 42 U.S.C § 405(g); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Golembiewski v. Barnhardt*, 322 F.3d 912, 915 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed *de novo*. *Haynes*, 416 F.3d at 626. Substantial evidence is more than a scintilla and means such relevant evidence as a reasonable mind might accept to support such a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes*, 416 F.3d at 626. An ALJ decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

### B. Fuehring's Motion for Remand

Fuehring must establish that she is disabled to be entitled to benefits under the Social Security Act. *See* 42 U.S.C. § 423(a)(1)(D). The Act specifically defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's

residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; *Briscoe*, 425 F.3d at 352. If the ALJ can find that the claimant is not disabled at any step, he does not go on to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

An impairment or combination of impairments is considered severe if the applicant's physical or mental ability to perform basic work activities is significantly limited. 20 C.F.R. § 404.1521(a). The combination of impairments is taken into account, even if each individual impairment would not be considered severe. 20 C.F.R. § 404.1523. If the applicant does not meet this requirement, then the applicant is not disabled. 20 C.F.R. § 404.1520(c). In order to be considered severe, the impairment must either cause the applicant's death, or has lasted or is expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. When assessing the severity of an impairment, the applicant's age, education, and work experience are not considered. *Id.* However, it is still possible for the applicant to have been disabled for a period of time in the past even if the applicant currently does not have a severe impairment. *Id.*

If the applicant's impairment or combination of impairments meets the requirements outlined in Subpart P, Appendix 1 and also meets the duration requirement, then the applicant is disabled without considering the applicant's age, work experience, or education. 20 C.F.R. § 404.1520(d). Once the ALJ finds that the applicant is not disabled after the first three steps, then the ALJ assesses the RFC. 20 C.F.R. § 404.1520(e). The RFC is the applicant's ability to do physical and mental work activities on a sustained basis despite limitations. *Id.* Once the RFC is determined, it is compared to the applicant's past relevant work to see if the applicant could still

perform that type of work. 20 C.F.R. § 404.1520(f). If the applicant could still perform past relevant work, then the applicant is not disabled. *Id.* Past relevant work includes any substantial work performed within the last 15 years. 20 C.F.R. § 404.1560(b)(1). The applicant has the burden to prove the first four steps, but upon reaching step five, the burden shifts to the Commissioner. 20 C.F.R. § 404.1520(e).

First, the Court must consider whether the ALJ erred by discounting Fuehring's treating physicians' opinions. Next, the Court must decide whether the ALJ's credibility determination was reasonable. Finally, the Court must consider whether the ALJ's RFC determination was supported by substantial evidence.

### 1. The ALJ reasonably discounted Fuehring's treating physicians' opinions.

Fuehring alleges that the ALJ did not give controlling weight to her treating physicians' opinions. "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record." *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004), *see* 20 C.F.R. § 404.1527(d)(2). If the ALJ does not give the treating physician's opinion controlling weight, he must present "good reasons" for discounting that opinion. *See* 20 C.F.R. §404.1527(d)(2). An ALJ's conjecture is never a permitted basis for ignoring a treating physician's views. *Moss v. Astrue,* 555 F.3d 556, 560 (7th Cir. 2009).

First, the ALJ discounted Dr. Nenadovich's opinion. When discounting his opinion, the ALJ cited to Dr. Nenadovich's Lumbar Spine Impairment Questionnaire (Tr. 27). In the Questionnaire, Dr. Nenadovich reported a limited range of motion, which did not support the limitations that Nenadovich recommended, such as needing to move around every hour, needing

8

thirty to sixty minutes before sitting again, and missing work more than three times per month. *Id*. Additionally, Dr. Nenadovich provided very little explanation for his opinions in this questionnaire (Tr. 352-358). Further, Dr. Nenadovich's May 2009 opinion conflicted with the state reviewing physicians' opinion that Fuehring had the ability to perform light work on the date she was last insured (Tr. 27-28). "A retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period." *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). Dr. Nenandovich's May 2009 opinion appeared to be based upon symptoms occurring after Fuehring's insured period because Fuehring described her post-insured symptoms differently (Tr. 27-28). Therefore, the ALJ offered good reasons for discounting Dr. Nenadovich's opinion. *See* 20 C.F.R. § 404.1527(d)(2).

Second, the ALJ discounted Dr. Jacobus' opinion. Dr. Jacobus completed an impairment questionnaire in February 2009, even though he had not examined her in almost five months (Tr. 310-314). Additionally, one of the state reviewing physicians noted that Dr. Jacobus was unaware of Fuehring's 95% improvement after epidural injection therapy (Tr. 27, 342). Further, Dr. Jacobus reported findings on the questionnaire that were not reflected in his treatment notes (Tr. 27). Thus, the ALJ offered good reasons for discounting Dr. Jacobus' opinion. *See* 20 C.F.R. § 404.1527(d)(2).

### 2. The ALJ reasonably found Fuehring to be not credible.

Fuehring next alleges that the ALJ erred in finding her not credible. A reviewing court "will affirm a credibility determination as long as the ALJ gives specific reasons that are supported by the record for [her] finding." *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). "A discrepancy between the degree of pain claimed by the applicant and that suggested

9

by medical records is probative of exaggeration." *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). The fact that a claimant fails to seek treatment for a condition that she alleges is disabling detracts from her claims of disability. *See Id.*

Here, the ALJ pointed to several specific reasons for finding Fuehring not credible. First, the record shows that as of Fuehring's last date insured, she had a 95% improvement in her back pain (Tr. 266). Additionally, the follow up examinations after both knee surgeries reported that she felt no pain (Tr. 299, 510). Also, the ALJ found suspect that Fuehring alleged a disability onset date of January 2007, but did not seek medical treatment until June 2008, and January 2007 was when she moved from Iowa to Indiana and ended her pet sitting business (Tr. 26). Further, the ALJ found Fuehring not credible because her assertions were contradicted by her actions during the hearing. *Id*. She testified that she suffered from side effects from her medications, like drowsiness and fatigue, but she showed no such side effects during the hearing even though she took her medications that morning. *Id*. Therefore, this Court finds that the ALJ gave well supported, specific reasons for finding Fuehring not credible.

### 3. The ALJ's RFC determination was supported by substantial evidence.

Finally, Fuehring contends that the ALJ's RFC assessment is not supported by the record. She alleges that the RFC determination is contradicted by the opinions of Dr. Nenadovich and Dr. Jacobus. However, as stated above, the ALJ reasonably discounted the opinions of these physicians because Dr. Nenadovich's opinion was based upon symptoms occurring after Fuehring's insured period, and Dr. Jacobus' opinion was inconsistent with his treatment notes. The ALJ looked to the overall record, the nature and frequency of treatment, and the reviewing physicians' opinions when making her RFC determination (Tr. 28). Therefore, this Court finds

that the ALJ's RFC assessment was supported by substantial evidence.

## III.   CONCLUSION

Because the ALJ reasonably discounted Fuehring's treating physicians' opinions, reasonably found Fuehring to be not credible, and her RFC determination was supported by substantial evidence, Fuehring's motion for remand is **DENIED**.  Accordingly, this Court **AFFIRMS** the ALJ's decision.

**SO ORDERED**

Dated this 15th day of March, 2012.

s/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge